CHRISTOPHER *v.* BROWN.

Division A. Apr. 2, 1951.

No. 37904 (51 So. (2d) 579)

Douglas C. Stone, for appellant.

Sims & Sims, for appellee.

**Lee, J.**

R. M. Christopher, doing business as East End Motor Company, on May 20, 1949, made affidavit that Leon Brown, Jr., was indebted to him in the sum of $350, and prayed for the issuance of a writ of attachment against his estate. The affidavit contained all of the 11 grounds mentioned in Section 2679, Code 1942.

Process was issued and served the same day. A Chevrolet automobile was taken into possession by the sheriff. The bond of Christopher and his sureties in the amount of $350 was approved.

Thereafter, he filed his declaration, returnable to the November term of the circuit court, alleging that the defendant Brown was indebted to him in the sum of $461.29 and attorney's fees. Brown answered and denied the debt, denied that he was a nonresident, and alleged that the attached automobile was his father's—a complete traverse of the allegations of the declaration. Sub-

sequently, on February 24, 1950, he filed a plea in abatement which was, in fact a reiteration of the denials and allegations contained in his previous answer.

The cause came on for trial at the April 1950 term. When counsel was questioning the first witness for the plaintiff as to the business transaction involved, the defendant objected on the ground that the main issue was whether or not the automobile was rightfully attached, whether the defendant was a resident of the State, and whether the automobile belonged to him. Counsel for the plaintiff replied that the plaintiff had the burden of proving the indebtedness, and grounds to believe that Brown was a nonresident and about to leave the State. At this juncture the judge asked, "Why not, in order to expedite, save time, just try both issues at one time?" After several statements from counsel, the Court said, "The issue will be that he was about to move himself or his property out of the state".

The trial proceeded. Plaintiff developed his case fully. He offered proof that the defendant was about to leave the state and to establish his indebtedness. Christopher had sold Brown a truck for a down payment of $800 and 12 notes of $123.47, payable monthly or a total of $1481.64. The first note was paid. There was default in the second. When the third became due Christopher had already repossessed the truck. It was shown to be in bad condition and the cost of repair aggregated in excess of $300. Christopher and another witness testified that Brown agreed to pay for the repairs, if the truck was transferred to another. Plaintiff's proof showed that Brown had said that the car belonged to him; that he had given a mortgage on it to a bank, and represented that it was his. Three witnesses testified that Brown, a short time before the service of the attachment, said that he was going to his home in Alabama.

Brown testified for himself as follows: There was no dispute as to the original purchase. He turned the truck back because he was unable to pay for it. He neither

authorized, nor agreed to pay for, the repairs. If some other person purchased the truck, such transferee would keep up the payments and thereby become the owner. He admitted that he signed the transfer agreement but gave no particular attention to the details. His father owned the car. A bill of sale so showing was introduced in evidence. He was merely taking care of the automobile and running it. He did not deny, on cross examination, that he told the three witnesses for the plaintiff that he was leaving the state. Neither did he testify that he was not about to leave the state.

The jury returned a verdict for Brown, and Christopher appeals.

Since there was no dispute that the defendant was about to remove the automobile from the state, the plaintiff would have been entitled to a directed verdict on that issue, if he had asked for it. But no such request was made. In that situation, Brown requested and was granted the following instruction: ''The Court instructs the jury for the defendant, that if you believe that the defendant, Leon Brown, Jr., was a resident of the State of Mississippi, at the time that the automobile, Chevrolet Automobile, was attached, and was not attempting to remove the automobile from the state, then the plaintiff wrongfully attached said automobile and you will return a verdict for the defendant.''

The granting of this instruction constituted reversible error. There was no evidence on which to base it. On the contrary, the evidence showed that Brown was about to remove the car from the state. And yet, by this instruction, the jury was permitted to find that the defendant was not attempting to remove the auomobile from the state, and, in so finding, completely absolve him from any responsibility whatever on the debt issue.

Several other errors were assigned. They may not recur, and we will pass on them only to the extent of clarifying the procedure in the next trial.

██ ██ It is contended that the court erred in trying the attachment and debt issues together. As a matter of fact, the court suggested this course, and both sides at least acquiesced, because no objection was made—they went ahead and tried the whole lawsuit. If the court was in error, such error was waived. And, of course, if the method of pleading is not objected to in the trial court, such objection will not be considered here. Federal Credit Co. v. Zepernick Grocery Co., 153 Miss. 494, 121 So. 114.

It is true that, ██ ██ under Section 2713, Code 1942, when a plea in abatement of an attachment is filed, it is not necessary to plead to the merits until such issue in abatement is disposed of. And, too, under Section 2716, Code 1942, it is necessary for the court to impanel a jury to try that issue. However, Chapter 230, Laws 1948, Section 1475.5, Code 1942 Annotated, provides in part as follows: "Pleas in circuit court are hereby abolished and every defense heretofore presentable by plea shall be made in an answer; and the answer may state as many defenses, whether consistent or not and whether heretofore made by plea in abatement or plea in bar, as in law or in fact, the defendant may have to the declaration or to any material part or parts thereof. But if matter which heretofore could constitute a plea be set up in the answer in such a manner as to be clearly distinct and readily separable and go to the entire present cause of action it may, on motion of either or any of the parties, be separately heard and disposed of before the principal trial of the cause, in the discretion of the court; . . ."

The above enactment was the legislative response to a widespread demand for the expediting of trials in the circuit court. To that end, it requires that all defenses shall be stated in the answer. Pleas in abatement are specifically mentioned. Provision is made for those cases wherein some particular defense is clearly distinct, readily separable and goes to the entire cause of action, as then stated. In such event, any of the parties may

move for a separate hearing thereon. In granting or refusing such motion, the trial judge exercises judicial discretion.

The efficacy of this legislation is apparent. In this cause, the issues were, in fact, twofold only: (1) Whether or not Brown owed the debt; and (2) Whether or not he was about to remove his automobile out of the state. He had been personally served with process. If the existence of the debt was proved to the satisfaction of the jury, Christopher would obtain a judgment. And, if Brown was about to remove his automobile from the state, then the right of attachment existed whereby it could be sold in satisfaction of the judgment. There was nothing to complicate the submission of these two issues to the same jury. In that situation, the plaintiff would ask that the jury be instructed to find for him on the attachment issue, if they believed from the preponderance of the evidence that Brown was about the remove his automobile from the state. The defense would ask the converse. The plaintiff would ask that the jury be instructed to find for him on the debt issue, if they believed from a preponderance of the evidence that Brown owed the debt. Likewise the defense would ask for the converse. (The above reference to the instruction on the attachment issue is illustrative only in view of our holding that there was no dispute on this issue in the actual trial of this case.) In such a case, the trial of the attachment issue by one jury, and, following that, a trial of the merits by another jury would be expensive and time consuming. Undoubtedly the legislature purposed to prevent such undue expense, loss of time and delay. They expressly vested discretion in the trial judge to determine when, and in what cases, separate hearings may be had. To that extent, in trials in the circuit court, Chapter 230, Laws 1948, Section 1475.5, Code 1942 Annotated, has supplanted Sections 2713 and 2716, Code 1942.

 The complaint of the appellant at the refusal of his requested instruction that has come to be known as

"falsus in uno, falsus in omnibus" is referred to only for emphasis. This Court has repeatedly held that this instruction should not be granted. Among such decisions are Metropolitan Life Insurance Co. v. Wright, 190 Miss. 53, 199 So. 289; Dixie Stock Yard, Inc., v. Ferguson, 192 Miss. 166, 4 So. (2d) 724; Sikes v. Thomas, 192 Miss. 647, 7 So. (2d) 527.

For the error indicated, this cause is reversed and remanded for a new trial.

Reversed and remanded.