**SOUTHERN MORTGAGE COMPANY, Plaintiff/Counterdefendant,**

v.

**Richard W. O'DOM, Defendant/Counterclaimant,**

v.

**Paul BROADHEAD, Third–Party Defendant.**

**Civ. A. No. E86–0121(L).**

United States District Court, S.D. of Mississippi, E.D.

Sept. 10, 1987.

---

See also 699 F.Supp. 1227.

Thomas L. Webb, Bourdeaux & Jones, Meridian, Miss., for plaintiff/counterdefendant.

Kenneth A. Rutherford, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendant/counterclaimant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of third-party defendant Paul Broadhead to dismiss the third-party complaint against him for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Third-party plaintiff Richard W. O'Dom timely responded to the motion and the court has considered the memoranda of authorities submitted by the parties.

The original claim in this lawsuit by Southern Mortgage Company (SMC) seeks recovery from defendant/third-party plaintiff Richard W. O'Dom of the sum of $500,-000.00, together with interest and attorney's fees, based on a promissory note on which plaintiff alleges O'Dom defaulted. O'Dom defended and counterclaimed on the basis that, *inter alia*, the note was induced by fraud. In addition, O'Dom filed a third-party complaint, impleading Paul Broadhead, president and sole stockholder of SMC. The following allegations by O'Dom form the basis of both his counterclaim against SMC and his third-party complaint against Broadhead.

O'Dom states that he was at one time the sole stockholder of the First United Bank, Meridian, Mississippi. In December of 1983, he and Broadhead entered into an agreement whereby Broadhead assumed twenty-five percent of First United Bank's indebtedness to the Mercantile Bank of Dallas, Texas in exchange for Broadhead's receiving twenty-five percent of First United's stock. Then in April 1984, Broadhead

induced O'Dom to transfer all interest in First United Bank to Broadhead in exchange for Broadhead's assumption of the bank's entire indebtedness to Mercantile Bank. They agreed that O'Dom could regain stock ownership at his option without additional payment by reassuming the indebtedness, and that O'Dom would receive $250,000.00 for "consulting work" regarding bank operations. Finally, under the terms of the alleged agreement, O'Dom was to continue owning and managing Financial Security Life of Mississippi, an insurance company which handled First United's insurance business.

According to O'Dom, once the agreement was consummated and stock transferred, Broadhead demanded that O'Dom sell Financial Security to him and threatened to set up his own insurance company and take all the bank's business in the event O'Dom refused. O'Dom sold the insurance company to Broadhead, who assured O'Dom that he would be retained as manager of the company at a substantial salary. This agreement, he contends, was reneged on by Broadhead who, after the sale, refused to honor the agreement.

Finally, because of the alleged misdeeds of Broadhead, O'Dom claims that he was required to borrow money to meet his financial obligations and to rebuild his business. He therefore approached Broadhead who, according to O'Dom, let him have $500,000.00. And, although he signed a promissory note due and payable by its terms six months from the date of execution, O'Dom claims that the note was executed with the "understanding" that the note would not be called at maturity, but rather could be continually renewed until O'Dom could afford to pay it off or, alternatively, O'Dom could simply not pay the note at all if O'Dom's financial condition did not allow repayment.

█ In both his counterclaim against SMC and his third-party complaint against Broadhead, O'Dom alleges causes of action for breach of fiduciary duty, fraud, breach of contract and breach of duty of good faith and fair dealing which he contends was owed him by Broadhead and SMC in their business and contractual dealings with him. Finally, O'Dom asserts a claim for abuse of process based on his claim that Broadhead and SMC were aware that the note was *not* to be called due and thus this lawsuit is not a legitimate attempt to collect a legitimate debt. Pursuant to Federal Rule of Civil Procedure 14(a),

> [a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

For impleader to be proper, the third party's liability must "depend upon the outcome of the main claim," and the third-party claim must be an attempt to "*pass on* to the third party all or part of the liability asserted against the defendant." *United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751 (5th Cir.1967). Further, while Rule 14(a) establishes a procedure or mechanism for bringing in a third party, the determination of whether the third-party claim is viable is governed by the applicable substantive law, here, Mississippi law. That is, impleader is proper only when a right to relief exists under the applicable substantive law. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1446, at 250 (1971); *see also General Dynamics Corp. v. Adams,* 340 F.2d 271 (5th Cir. 1965). In the court's opinion, the claims asserted by O'Dom are not the proper subject of a third-party complaint.

█ Although it is not clear, it appears that O'Dom is, *via* the third party complaint, attempting to impose liability on Broadhead for transactions which antedate the $500,000.00 loan transaction that is the subject of SMC's claim against O'Dom. That is, he claims in his third-party complaint against Broadhead and in his counterclaim against SMC that his borrowing of money from SMC was necessitated by Broadhead's and SMC's breach of fiduciary duties, breach of contract, breach of duty of good faith and fair dealing and fraud in their business and contractual dealings with O'Dom. Whatever may be said with

reference to O'Dom's claim for fraudulent inducement in the execution of the note, the court is of the opinion that to the extent that O'Dom seeks recovery relative to activities occurring before his execution of the note in favor of SMC, those claims are clearly separate and apart from the loan transaction, and in its discretion, the court finds that those claims should be dismissed. As the Fifth Circuit recognized in *Joe Grasso & Son,* "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." *Joe Grasso & Son,* 380 F.2d at 751.

 With reference to the claim concerning the promissory note itself, it is somewhat difficult to discern from the third-party complaint the theory upon which O'Dom seeks recovery against Broadhead. It is clear that the plaintiff, SMC, is seeking recovery from O'Dom on the promissory note executed by him in favor of SMC. O'Dom apparently takes the position that should he, on some ground, be held liable to SMC on the note, then he will be entitled to recovery from Broadhead by way of set-off due to Broadhead's fraudulent representations that induced O'Dom's execution of the note. That is, the claim asserted against Broadhead is premised upon Broadhead's alleged fraud. The complaint charges that the nature of Broadhead's promise was that SMC would continue to renew the note so long as O'Dom could not pay it or, in the alternative, if O'Dom were never able to repay the debt, he would not be required to do so.[1]

 It has been recognized that a claim for fraud

cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon the mere failure to perform a promise—non-performance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time.... The reasons for the rule ... are "that 'a mere promise to perform an act in the future is not, in the legal sense, a representation, and that a mere failure to perform it does not change its character'."

*Credit Industrial Co. v. Adams County Lumber & Supply Co.,* 215 Miss. 282, 60 So.2d 790, 794 (1952), *quoted in In re Posey,* 57 B.R. 858, 862 (Bankr.N.D.Miss. 1985). Viewed another way, "fraud ... may not be predicated on a representation as to matters in the future, or upon a promise to do some act in the future, because the person to whom such statements were made has no right to rely on them." *Davidson v. State Farm Fire & Casualty Co.,* 641 F.Supp. 503, 512 (N.D.Miss.1986). Thus, the general rule is that "predictions or promises as to future events are not ordinarily sufficient upon which to base actionable fraud...." *Kidd v. Kidd,* 210 Miss. 465, 49 So.2d 824, 827 (1951). An exception to this general rule is recognized in cases where the promise is made with the present undisclosed intention not to perform in accordance with that promise. *See id.* 49 So.2d at 827–28; *see also Walker v. U–Haul Company of Mississippi,* 734 F.2d 1068, 1076 (5th Cir.1984)(recognizing liability under Mississippi law for fraud where speaker misstates present intention or makes promise without intent to perform it). In the case at bar, the alleged "representation" by Broadhead consisted of his promise that the note would not be

---

1. Broadhead asserts that even had he in fact made oral representations to O'Dom to the effect that O'Dom would not be required to repay the loan, he is nevertheless not liable on the basis of that contract or oral promise since O'Dom's claim would clearly be barred by the statute of frauds. Assuming that Broadhead's promise was an agreement to pay O'Dom's debt if O'Dom could not afford to do so himself, the statute of frauds would be applicable. *See* Miss Code Ann. § 15–3–1 (1972)(promise to answer for debt or default of another must be in writing

to be enforceable). In that event, O'Dom could not obtain specific performance of the oral agreement. Under Mississippi law, however, an action for fraud can be maintained on the basis of a contract or promise that is itself unenforceable under the statute of frauds. *Walker v. U–Haul Company of Mississippi,* 734 F.2d 1068, 178 (5th Cir.1984). So, while O'Dom could not recover on the contract itself, assuming one existed, damages incurred in reliance on a defendant's fraudulent oral promise are recoverable.

called due until and unless O'Dom was financially able to repay the loan or perhaps *never* if O'Dom were never able to repay it. This clearly was a promise to do—or in this case not to do—some act in the future and cannot therefore provide the basis for a claim of fraud. There has been no allegation or intimation by O'Dom that, at the time the alleged representations were made, Broadhead had the "present undisclosed intention ... not to fulfill his promises." *Davidson*, 641 F.Supp. at 862. *See Fed.R.Civ.Proc. 9(b)*. And, "the mere fact that a promise was broken is not in itself sufficient proof that the promissor so intended at the time made, for this would be, in practical effect, to convert the exception into the general rule." *Salitan v. Horn*, 212 Miss. 794, 55 So.2d 444, 446 (1951); *see also Soper v. Simmons Co.*, 632 F.Supp. 244, 248 (S.D.N.Y.1986) (proof of intent not to perform must be based on more than a mere showing of non-performance).

Based on the foregoing, the court is of the opinion that the motion to dismiss the third-party complaint is well taken and should be granted.

Accordingly, it is ordered that the motion of the third-party defendant Paul Broadhead to dismiss the third-party complaint against him is granted.